ELIPHAL RHINES, APPELLANT, V. SKINNER PACKING COMPANY, APPELLEE.

FILED MARCH 28, 1922.    No. 22006.

1. **Corporations: LICENSES: CONTRACTS.** It is the public policy of Missouri to hold void contracts of foreign corporations, if made in that state with its residents without a license in defiance of a Missouri statute enacted to protect the public from fraud and imposition and subjecting the offenders to fine and imprisonment, though the statute does not in express terms declare such contracts void.

2. ————: ————: SALE OF STOCK. A sale of capital stock issued by a Maine corporation, having authority to transact business in Nebraska, may be declared void in Nebraska, if made in Missouri to a resident thereof without a license in defiance of a Missouri statute enacted to protect the people of that state from fraud and imposition and subjecting the offender to fine and imprisonment.

3. ————: ————: ————. Where a Maine corporation, having a principal place of business in Nebraska, sends its agents to Missouri and there persuades a resident of that state to sign a subscription for shares of stock and a note for the purchase price and there delivers the stock which is there accepted, the sale is a Missouri transaction, though made in defiance of its laws.

4. ————: ————: ————. Where the laws of a state forbid a foreign corporation to sell or attempt to sell therein shares of stock without a license, a subscription for such stock is an inhibited act and is included in a sale.

5. **Sales: RESCISSION.** The delay of a buyer in rescinding an unlawful sale, if caused by the seller's fraud, does not necessarily prevent a rescission.

6. **Corporations: SALE OF STOCK: TENDER.** Tender of shares of stock to the corporation which issued them, the sale being fraudulent and void, *held* sufficient under the circumstances outlined in the opinion.

Rhines v. Skinner Packing Co.

7. —— ——: ACTION FOR PRICE OF STOCK: NONSUIT. An involuntary nonsuit in an action to recover the price paid by plaintiff upon a void sale of corporate stock issued by defendant *held* erroneous.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE. *Reversed.*

*Crofoot, Vinsonhaler, Fraser, Connolly & Stryker,* for appellant.

*Sullivan, Wright & Thummel, Hastings, Ritchie & Canaday,* and *Arthur F. Mullen, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., RAPER and STEWART, District Judges.

ROSE, J.

This is an action to recover $12,500, the purchase price paid by plaintiff to defendant for 100 shares of the latter's preferred stock. The grounds of recovery are invalidity of the sale and fraud perpetrated by defendant in persuading plaintiff to make the purchase. Plaintiff alleged that, upon discovery of the fraud, he rescinded the contract. He tendered back the stock or its equivalent. Defendant pleaded that the sale was valid and denied the fraud charged. When the evidence on behalf of plaintiff had been adduced, the trial court, on motion of defendant, excused the jury and entered an involuntary nonsuit. Plaintiff has appealed.

Plaintiff contends that the judgment should be reversed because defendant entered into the contract of sale in Missouri in violation of a penal statute of that state, the sale by reason thereof being void, and because plaintiff was induced by false representations of defendant and its agents to buy the stock. Proper deductions from the evidence in connection with the law applicable to the facts lead to the conclusion that both points are well taken and that the trial court erred.

Was the sale void? Was plaintiff, on the case made, entitled to recover back the purchase price?

A statute of Missouri declared it unlawful for a foreign corporation to sell, or attempt to sell, its stock in that state without filing with the bank commissioner thereof documents showing the nature of its organization and its methods of transacting business. Before selling, or attempting to sell, corporate stock there, defendant and its agents were required to pay a fee and to procure a license. Violations of the statute were punishable by fine and imprisonment. Rev. St. Missouri 1919, secs. 11919-11932. Defendant was a corporation organized under the laws of Maine and had a principal office in Omaha, Nebraska. There was no attempt to comply with the statute of Missouri.

Plaintiff was 80 years of age. He had been a farmer. He had sold a farm in Iowa and proceeds to the extent of $12,500 were secured by a mortgage. While he was residing in Excelsior Springs, Missouri, an agent of defendant, knowing that the mortgage would soon become due, approached defendant there, repeatedly importuned him to buy stock, and with the aid of another agent induced him to make the purchase. Plaintiff was told that the income from the stock would exceed the interest on the mortgage. Other alluring and deceitful inducements were offered. As a result plaintiff signed at Excelsior Springs a subscription contract and a note for the amount of the purchase price. Later he there received by mail from Omaha a certificate for 100 shares of the preferred stock of defendant. The note was afterward paid.

Plaintiff had a right to assume that defendant and its agents had complied with the legislative requirements of Missouri before attempting to sell stock there. The collection of fees was an incident of legislation. One of the principal purposes of the statute was to protect the public from fraud and imposition in the sale of stock issued by foreign corporations having no authority to transact business in Missouri. The penalties were directed alone to corporations and their agents. The duty of defendant

to qualify itself in Missouri before attempting to transact business there did not rest on plaintiff to any extent. He did not violate any provision of the Missouri law, nor did he participate with defendant or its agents in any criminal act. He was therefore entitled to assert his right to the protection of the Missouri statute.

The sale, if a Missouri contract, seems to be void when tested by the public policy of Missouri, as declared by the judiciary of that state in enforcing statutes of this kind. *Booth v. Scott*, 276 Mo. 1; *Amalgamated Zinc & Lead Co. v. Bay State Zinc Mining Co.*, 221 Mo. 7. Many other courts have taken the same view of similar statutes. 14a C. J. 1296, sec. 4004, note 95; *Edward v. Ioor*, 205 Mich. 617; note in 15 A. L. R. 256, 262.

To defeat the action defendant argues that the sale was a Nebraska contract unaffected by the laws of Missouri. In this connection it is asserted that the stock was obtained in Omaha, Nebraska, that the note for the purchase price was accepted there, and that it was there the final act of approving the sale was performed. This position is clearly untenable. Defendant sent its agents to Excelsior Springs, Missouri, to negotiate the sale. The representations and inducements resulting in the purchase were made there. It was there that the subscription for the stock and the purchase money note were signed. It was there the stock was received by plaintiff and accepted by him. If the concluding act in the negotiations is an important factor in determining the situs, as argued by defendant, the delivery in Missouri and the acceptance of the stock there should not be ignored. Defendant cannot evade the consequence of its unlawful acts in Missouri on this ground or thus take from plaintiff the protection of the Missouri statute. The mere attempt of defendant to make the sale in Missouri, without complying with the Missouri statute, was an unlawful act culminating in the void contract which plaintiff is attempting to rescind. The nonsuit cannot be justified on the ground that the sale

was a Nebraska contract. It was a Missouri transaction and should be litigated as such.

It is further argued by defendant that the transaction in Missouri was a subscription for, and not a purchase of, the stock. For reasons already stated this point is also without merit. Besides, "A 'sale' of shares within such a law includes an agreement to sell" and "an exchange for other stock." 15 A. L. R. 264, note.

Delay in rescission and failure of plaintiff to plead and prove an unconditional tender seem to be the principal points upon which defendant relies to sustain the nonsuit.

Plaintiff rescinded his purchase within a year and he was not too late as a matter of law, when the circumstances are considered. While the suspicion that he had been swindled arose in his mind shortly after he bought the stock, he was without definite knowledge of the facts and of his right to protection until he sought relief. In the meantime he did not get from defendant accurate knowledge of its operations and business. On the contrary, favorable reports circulated by defendant, but not justified by existing conditions, reached him frequently. Defendant thus caused the delay of which it complains. These inferences and conclusions are fairly drawn from the testimony which must be accepted as verity for the purpose of a *prima facie* case in favor of plaintiff. In this view of the evidence and the law, the judgment in favor of defendant cannot be affirmed on the ground of laches.

Was there a sufficient tender? Defendant was the "Skinner Packing Company." Plaintiff bought 100 shares of its stock December 20, 1919. In January following he exchanged them for 200 shares of the "Skinner Company," a holding corporation having the same officers as defendant. This exchange of 100 shares of the Skinner Packing Company for 200 shares of the Skinner Company was mentioned by an agent of defendant as an inducement to the original purchase. In the meantime officers of both

corporations urged defendant to make the exchange. What he had in his hands to tender back after the exchange, therefore, as the consideration for his original stock, was the stock of the "Skinner Company." Had this tender been accepted the officers of defendant would have had in their own hands all the stock received by him from both corporations. A proper tender was made at the trial and, if the plea of tender is wanting in any respect, the petition is still amendable to conform to the proof—an unnecessary formality under the circumstances at this stage of the litigation. In any event a timely, perfect tender in every respect would have been unavailing. It would have been rejected and the attitude of defendant so shows.

As the case stood when the nonsuit was entered, plaintiff was entitled to judgment as a matter of law on the undisputed facts, but, if this theory were rejected, a question of fact for the jury would remain. There was proof of material false representations upon which plaintiff relied under circumstances justifying him in doing so. He was told in effect, among other things, that there was money available for a dividend. There were no net earnings legally available for such a purpose. Real estate had been purchased by defendant for a packing industry and reappraisement showed a temporary rise in value, but the increase was not a proper basis for a dividend. No money went into the treasury from that source. The logic of such a system of finance is to pay dividends out of the proceeds of the sale of capital stock without regard to the net earnings of the industrial plant. The representation that money was available to pay a dividend was a material fact and cannot be justified by a temporary rise in the value of real estate purchased for a corporate enterprise without regard to the net earnings of the corporation.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.